and Garcia, 2432.32 and 2432.93. Sorry, we've lost your audience. I don't know what they've been missing here. Let's just wait for things to settle a little bit more before we jump in. Okay. Whenever you're ready. Yes, Your Honor. Good morning, and may it please the Court. My name is John Bouza, and I represent Juan Felipe Santibanez Cardona in this appeal. I ask that the Court vacate Mr. Santibanez's sentence and remand the matter back to the district court level for resentencing before a different judge. Simply put, the district court's references to Mr. Santibanez's national origin are virtually identical to the ones made in similar cases whereby this Court vacated the sentences and remanded the matter for resentencing. Why wasn't Judge Caproni simply acknowledging the fact that the crime committed in a particular country and then was effectuating her view of general deterrence? Well, Your Honor, Judge Caproni specifically stated that in the context of general deterrence that she wanted to send a message to the people of Colombia that narco-trafficking is not going to be permitted. I think it is incredibly important for the word to get back to Colombia. You engage in this sort of drug trafficking and you get caught and you get brought back to the United States. You're going to spend a very long time in prison. We take this crime very seriously. That's, I think, your best argument there. But again, why isn't that arguing general – or pushing general deterrence on her part? She can't ignore the fact that the crime was committed in a particular country. She obviously is required by law to discuss general deterrence. But in invoking Mr. Santibanez-Cordona's national origin and the way that she did, her statements were eerily similar to statements made in cases that this Court found were impermissible. For example, in Long, the Court stated the purpose of my sentence here is to punish the defendant and to generally deter others, particularly others in the Asiatic community, because this case received a certain amount of publicity in the Asiatic community. So could the judge have said, as long as she left out national origin, could she have said, look, I'm very concerned about general deterrence, drug trafficking is a scourge, and I want to send a message that this will not be tolerated? Of course. There's no question that that is an appropriate statement by any court to make. So it's when you're only generally deterring a specific national origin or a set of people, a subset of people, whether it's by race or gender or national origin or any of those disapproved factors, that's the next step that the judge can't take? Yes. As this Court has repeatedly said for close to 40 years now, if it appears – and this is, as the government conceded in their brief, this is a prophylactic situation. If it appears to a reasonable observer that national origin played a role in imposing sentence, then the matter ought to be remanded. Here's my concern. I'm going to proffer that if we adopt your view, we're setting a trap for the unwary in the sense that once Judge Caproni says Columbia, that's it, reversal, remand. And I'm not quite sure that makes sense for us to be doing that. And that's not what I'm asking. In no way am I saying that it is not an appropriate thing to acknowledge the circumstances of the crime as the Court is required to under 3553A. The issue here, though, is that in specifically targeting a group of people as the reason why the general deterrence must exist, the quote, sending a message to this group of people, this Court has said for close to 40 years that's not permissible. So is it – is what's impermissible the fact that Judge Caproni was targeting her general deterrence point at a particular country? Is that it? At a particular country, specifically Mr. Santibanez Cardona's national origin. What I want to emphasize in this case, and the reason why it's significant here, and the reason why this is not just to use the word Columbia and therefore the case should be remanded, which is not what I'm arguing for. Mr. Santibanez Cardona, the record I think clearly states was a drug addict. And the central point of my arguments at sentencing, and I think this was sort of not really disputed, was that his actions were in many respects that of a person who was severely under the influence of alcohol. I analogized at Mr. Cardona's – Santibanez's – Santibanez Cardona's sentence. I analyzed – I compared it, I would say, to a – to a drug addict in America, a person who is doing what they're doing because of their mental health issues. Now, the Court can reject or adopt that to what it wants. But here what Judge Caproni did was she pivoted immediately to his national origin. I need to send a message to the people of Columbia that this sort of thing is not to be tolerated. And this Court, I just want to emphasize, has repeatedly in published opinions, in summary orders, said that anything coming close to the kind of language that was used by Judge Caproni ought to remand the matter. So, I mean, for example, in Vasquez Drew, which I mentioned, which is a summary order from 2001, I mean, if you swap out the word Colombian and swap in the word Bolivian, it's essentially the same statement. In that case, the government conceded and didn't even file a brief saying that the matter ought to be taken up in the Second Circuit. They conceded that the matter, again, because it's a prophylactic rule, should be remanded for resentencing. And all I'm – yes, Judge. I'm not going to fight you on the similarity of Leung and Cava to this case. I'm just questioning the propriety of utilizing that in this case, given her single reference to Columbia. I believe that the record as a whole in this case would lead a reasonable observer to believe that national – that Mr. Santibanez-Cordona's national origin played a significant role at his – at his sentencing, like in Cava, like in Leung, and like the numerous cases that this Court has decided, such that he was essentially deprived of a unique sentencing proceeding unique to him and to who he was. And I submit respectfully that if the Court would adopt your concerns and rule that the matter ought to not be remanded, then essentially it's overruling 40 – close to 40 years of precedent. And I just ask the Court not to do that. Are you – if we do remand, are you arguing that – are you contending that it should be sent in addition to another judge? Yes, Judge. I am. As this Court has said is normal in these circumstances. To be clear, I take it you're not arguing that the sentencing judge was biased in any way. In no way am I arguing that. No way am I suggesting that. As this Court has stated in Leung and in Cava, that's not a necessary requirement. In those cases, the Court – this Court essentially went out of its way to say we don't believe that there was any bias or racism or anything on the part of the judge. But just as a matter of the appearance of justice, we require that the matter be remanded. And I'm asking for the same thing here. I'm not in any way accusing Judge Caproni of anything racist or anything untoward. But this case is, in my view, identical. So I ask that it be treated identically. Thank you. Thank you. I appreciate your evidence. Attorney Cassidy. Good morning, Your Honors. I'm just going to push this down a little bit. Thank you. I represent Mr. Montoya Garcia, who was sentenced just a few weeks after Mr. Ibanez. And at his sentencing, the district court made the same kind of comments on two separate occasions. In fact, perhaps they were even worse. First, in response to defense counsel's argument that five years was sufficient for deterrence in this case, the court said, Colombians need to understand and they need to quit exporting cocaine in the United States. And if they get caught, they will do a lot of time. I mean, I don't know how else we will deal with the Colombian problem. So how do we deal, counsel, with the fact that in your client's case, unlike your colleagues, the government appropriately steps in to try to sort of ask the judge, Judge, you're not saying that you're doing this because of national origin, right? And the judge says, well, it's an interesting sentence. The judge says, no bearing. The sentence would have been the same if it was entirely based on the activities with the informant as part of the activities in the conspiracy in response to the government's inquiry about whether the nationality had any bearing. Is that the kind of thing that can correct this problem? That did not correct it. The court's statements in this case were woefully inadequate to correct the overwhelming impression that the Colombian nationality of the defendant played a role in his sentencing. So why not? In light of we have all this case law that talks about we assume that just the sentencing judge is taking into account all the sentencing factors. We assume a lot of things about what judges do in the trial court. And when the judge says, for example, the cases where they say I would have given the same sentence even if I had or had not applied this two-level increase under the guidelines, right, we take their word on that. Why do we not take the judge's word in this circumstance? Well, first of all, that's not even the inquiry. That's more of a harmless error analysis where the court says it would have given the same sentence. The question for the court of appeals is whether then the error was harmless. This is not the kind of error that's harm — that is subject to harmless error. The court just — the court has repeatedly said in all of these cases that if there is even a risk that a reasonable observer observing the whole thing would — might infer that the court considered the nationality played a role, that the defendant's and resentenced to a different judge. Now, the court — this court has said that so many times. And it doesn't matter whether the court is actually biased or not. In this case, I submit that the statements made in response to the prompts of the prosecutor trying to clean up the record were just completely inadequate for two reasons. One was the very perfunctory and terse nature of the comments, of the oh, no and no bearing, which simply parroted the prosecutor's words. And the second is how many times the court returned to this. First, the court had made these statements in co-defendant sentencing a few weeks earlier. Then made the first statement in Montoya sentencing. And after saying in response to the government's question, could you — this didn't — you're not saying that nationality played a role, are you? Oh, no. Just a few pages later, just before imposing 20 years, an extremely harsh sentence that was beyond what probation requested, the court again returned to the same theme and said, I believe it is important for the message to get back to the drug traffickers in South America and Colombia as well, to stop importing drugs. So having already been warned and issued the perfunctory oh, no, the court then did the same exact thing over again. And just proving that that response was nothing more than a pro forma denial. Why do you characterize it that way? Why can't it be characterized as a specific, direct and clear response to the prosecutor's prompt if the court could just clarify that the defendant's nationality had no bearing? Her response was right on point and specific. No bearing. So why perfunctory? Why not the answer? Well, it just repeated the words that the government had said. And then the court went on to say that the sentence would have been the same if it was entirely based on the activities of the conspiracy, which was basically acknowledging that she had considered nationality as a role. But she was making the so-called harmless error argument that it wouldn't have made a difference trying to avoid review. And this Court doesn't always accept those statements, even in the harmless error context. We cited a case in our brief, I think it was Feldman, in which the Court said an incantation that the sentence would have been the same is not enough to insulate a sentence from review. Are you arguing, because I was a little confused by your reference to the Senator Bonet's sentencing, you're not arguing that her comments in that sentencing are relevant to the comments in this case? I am arguing that. I mean, we don't have to consider that, but that is just another. If under the reasonable observer standard, if a reasonable observer watching this case, reading these transcripts or watching this case, observed both of these sentences and saw that the judge referred three times that it was a persistent point, first in one co-defendant's sentencing, and then another, and then even after she was warned that this, you know, this was a problem, it was such a problem that the prosecutor intervened, to come back to it again a third time, that regardless of the no bearing and the oh, no, that it is very likely that a reasonable observer would infer that nationality did play a role in sentencing. Is the concern that underlies, I mean, I grant you that the statements here sort of map fairly verbatim onto statements that we've disapproved in the past. I don't think in any of those cases the defendant committed the offense conduct in a foreign country, and I'm wondering whether that changes the analysis that we've got to send a message to Colombians when this was not somebody of Colombian descent who was living in the U.S., but was actually doing the offense conduct there, whether that just casts it in a different light in terms of whether it's problematic. It doesn't cast it in a different light, Your Honor, because the Court could certainly talk about the circumstances and the facts, and that was discussed. That was all hashed out, all the facts that took place in Colombia. And by the way, I think one of these other cases Vasquez drew was an importation case from Bolivia, but I think. I could be wrong, but I think it was. But the, you know, and CABA addressed this. In CABA, the government made an argument similar to this government's argument in this case, that because the defendant counsel discussed the defendant's background in Guinea and all the struggles she had growing up and what was happening to her family now, that this was a legitimate response. And the Court said, no, the mistake the district court made was not in its consideration of the defendant's background as an immigrant from Guinea. And here, what I would say is the mistake the Court made is not in discussing the circumstances of the crime that took place in Colombia, and that was all discussed by the parties as well. It was the Court's apparent suggestion that the sentence was based, at least in part, on the defendant's identification with the West African community. And that's what we have here. We have the Court stating as plainly as possible that the sentence needs to be severe enough to send a message to the Colombians so that they stop doing this. And so the clear implication is that I need to impose a higher sentence on this defendant because he's one of those Colombian drug dealers, and the Colombians need to get the message. Okay. Appreciate that. We'll hear from you again as well. So now maybe we'll take a break and we'll hear from the government. Attorney Hellman. Thank you. May it please the Court. I am Matthew Hellman, an Assistant United States Attorney in the Southern District of New York. I represent the government, and I represented the government in each of the cases in the district court as well, and it so happens that I represented the government in Vasquez Drew, which is, of course, a topic of discussion. The government's position is that Mr. Santibanez and Montoya conspired with other Colombian narco-traffickers at scale, at massive scale, controlling jungle airstrips, laboratories, seaports, in an origin country, Colombia, for cocaine. In fact, as the record demonstrates, the origin of over 70 percent of the cocaine, which is introduced worldwide. How do you distinguish CABA and Lyon, which is a precedent here? Both CABA, the problematic comments in both CABA and Lyon refer to communities and not crimes. And they totally disconnect the crimes from those communities, which is not something that was possible for Judge Caproni to do in a narcotics importation case, specifically a narcotics importation case from the singular origin country of cocaine in the world. But if these defendants were not from Colombia, then that statement wouldn't have been apt, and therefore their origin in Colombia mattered. If they had been participating in narco-trafficking from Colombia, the comments would have been apt. I submit respectfully, and I think that's exactly what Judge Caproni was getting at when she is referring to the Colombian narco-trafficking problem. She's talking about the issue that exists in the world, that almost two-thirds of all the cocaine in it is coming from this particular locus by people who are trafficking narcotics from there. What she meant to say from your perspective is, or we should read these comments to say, we need to send a message to everyone that they should not bring cocaine here from Colombia. Yes. That's what she meant. That's what she said, right? She said we need to send a message to the Colombians. Who are engaged in narco-trafficking. Right. But she could have said, if the problem is that Colombia is a source country rather than Colombians are the problem. Remember, we are in this sort of, as you conceded appropriately, in an appearance context as we review this, that that is different, right? I need to send a message to everyone, whether you're from Colombia or Canada or Norway or the United States, that you can't bring cocaine here from Colombia. Full stop or you'll go to jail for a long time. As opposed to, I need to send a message to the Colombians. That is, that's different. It's qualitatively different, right? It's heard differently. It is, but the judge's comments are always within the context of Colombians engaged in narco-trafficking, which sets those comments apart from the next closest category in Vasquez Drew. There is a reference to the Bolivian people in Vasquez Drew. That was the formulation in that case. The Colombian people, that particular formulation is not used. What about Montoya's? I think I've got this quote right. It's a motivating factor in the sense that Colombians need to understand they need to quit exporting cocaine into the United States. That's not Colombian narco-traffickers need to target some country other than mine. That's Colombians, the people, need to stop committing this crime. How is that different than Vasquez Drew? Well, I read those comments together to mean the Colombians who are exporting cocaine. Well, and what Vasquez Drew said was, it's important that the people in Bolivia understand what happens when you send cocaine to America. I'm having a really hard time finding the space between those two. Well, understood. I think there's a general reference to the Bolivian people and what happens to those who traffic narcotics in the case of Vasquez Drew against here, the question of Colombians engaged in narco-trafficking. That's a specific group of criminals who need to be generally deterred under 3553A2B. So you were the lawyer who jumped in in the sentencing in the district court and said, you don't mean to say, I don't think that's okay, you don't mean to say nationality. Is that what you're saying? No, that was another A it was saying. Oh, okay. All right. But I was present for oral argument in Vasquez Drew, although I did not represent the government, an oral argument on appeal in that case. And during oral argument in that case, several important points were made. One was that the government's advocacy in Vasquez Drew seemed to invite the comments from the court, that the government's advocacy might have been read, although it was clear in that case also that the government had not, in fact, done this, that Bolivian people needed to be sent a message, and that then the court in that case responded to that encomium by referencing the Bolivian people. The government's sentencing advocacy in both Santibanez and Montoya did not do that, and the court did not seem to be responding to such requests in any way. Second, and common to both of the cases, there was the fact that the Bolivian people were referenced rather than a specific group, criminals engaged in narco-trafficking. And then finally, and it's specific to Montoya here, as the judge just referenced, the court said, you know, had there been an opportunity to point out that this wasn't what was actually happening, in other words, natural origin was not, in fact, being used to influence the sentence, that would have fixed the problem. And that's precisely what happened, of course, in Mr. Montoya's case. To the extent that there was more than one reference to Colombian narco-traffickers during Mr. Montoya's sentencing, certainly the two separate remarks by the court that natural origin was not clearly stated, not influencing the sentencing decision in that case, would cause a reasonable observer to conclude that the influence of national origin influencing the court was mistaken. Is it? I mean, there's narco-trafficking from other countries as well, and I understand the description about the unique role of Colombia, but would it be permissible for the district court to say international narco-trafficking is bad, Mexican narco-trafficking is bad, Bolivian narco-trafficking is bad, but Colombia narco-trafficking is particularly corrosive to our communities here, and because of that, I'm going to, that will affect my sentence, that this is Colombia narco-trafficking. Would that be okay? I think the question would be, as it is here, to look at the entirety of the record. No, no, I'm giving you a hypothetical. I'm not asking, like, I just told you in my hypothetical that the court is very clear that the court is, a component of the court's sentencing decision is a particular concern that Colombia narco-trafficking is a greater threat or warrants greater punishment than international narco-trafficking from, through another source country. I think if the facts of the case warranted it, it may well be appropriate, and that the court in that specific case should make absolutely clear this is not about national origin. But I've just said it was. Well, not about national origin. It's about the, I see you're distinguishing national origin of the individuals involved versus the source country through which the drugs are imported. I'm assuming, yes, and I'm assuming on the court's hypothetical that this hypothetical court is also not actually using national origin as a basis on which to sentence the defendant, but responding to a particular type of crime as it is commanded to do when considering general and specific deterrents. So it has to consider the particular context of the particular crime, which also separates this case from CABA and LUNG and many others. This is about narcotics importation and outside the country from a particular place. And so on the assumption that we're always talking about a court that has not actually committed a constitutional violation, that what we're talking about is appearance, the court should be careful to couch its remarks to be specific about why this particular type of crime, committed in a particular type of way or from a particular place, needs to be addressed specifically. So in our statutes, is narco-trafficking, is importation from Colombia a different crime than importation of huge volumes from Mexico? Certainly not. So when you say the type of crime is, I guess I'm, I think what you're saying is it's okay to focus greater punitive consequences on trafficking from one country versus another. Is that essentially what you're saying because of the specific concerns about narco-trafficking in Colombia? I think it is. So no, that's not what I mean to say. Maybe type is the wrong word, but I think the how is what I mean. And so when we're talking about literal thousands of kilos ton quantities, that's only happening from a particular place and in a particular way, and I'm not sure why a court-imposing sentence would be ignoring that versus Well, I mean, the court could certainly talk about this kind of narco-trafficking at this scale, right? I mean, I'm just, I guess what I'm trying to figure out is there's some arguments about what the court did and didn't say, but I'm trying to figure out if the court had said out loud what we're worried one might think the court had said, would that be okay? And I think what I'm hearing you say is yes. Provided the court can appropriately explain why this is not actually a reference in any way to a defendant's national origin or any person's national origin. If it is locus, if it is police-specific and there's a good reason for that, then the court ought to be able to take that into account. So if we were talking about in Montoya the potentially curative statements, let's assume for the sake of argument that the court, that this court thinks the statements are problematic, but that in Montoya they're cured. Would you, that would put us in a situation where basically the same issue applies to co-defendants sentenced a few weeks apart in front of the same judge, but one of them would be vacated and one would not. And does that strike you as problematic in any way, that these two would be, they're so tied together but would be treated differently based on that comment in the Montoya case which comes a few weeks later? I appreciate the question. I think they're, so in the first, I think they're considered separately and the comments are separate in both. And I think the comments in Santibanez are, don't create the same appearance questions as they do. But hypothetically, if we hypothetically thought both sets of comments created the appearance problem and only one case had the, this may be an unfair question, I get that. But it's sort of the practical reality of talking about appearances, how it would feel and look to say, Mr. Montoya, I'm sorry, because the government did step in in your case and say, hang on a second, Judge, you didn't mean that, right? And the government did not step in in the Santibanez case and say, hang on, you didn't mean that. One of you is getting a resentencing and one of you is not. I'm having, I'm just sort of thinking about the appearance of that and the potential sort of appearance of injustice there. Yeah. So we do consider, I think, them separately. If we consider them together, as was sort of discussed in earlier oral argument, then arguably both would be fixed because somebody, the reasonable observer went to both sentences and probably feels secure by the end of Montoya's that Judge Caproni was not referring impermissibly to national origin in either. But taking them independently, if we're in the world where we're saying the appearance issue was created, but the curative worked in Montoya, is that unfair as to Mr. Santibanez? I think not because what we're trying to do here is ensure that the reasonable observer has not been left with the wrong impression and only the reasonable observer in the case of Montoya experienced the curative and had any concerns allayed. The reasonable observer in Santibanez, assuming in the hypothetical that the comments did create that impression, wasn't told. I didn't mean national origin to influence my decision in any way. So that's the whole purpose of using these curative instructions and why they can be helpful. Thank you. Thanks very much. Appreciate it. Attorney Luzzo. Yes, Your Honor. Thank you. Very, very briefly. I just want to emphasize just really one major point. Obviously, in the interest of judicial economy, we have one oral argument scheduled for two co-defendants here. The government responded with one brief for both co-defendants. And I submit respectfully that they sort of conflate the two separate proceedings and they make arguments that happened or may not have happened in one with regard to the other. And I just want to emphasize that Mr. Santibanez Cardona is his own person. He is entitled under the law to his own individualized sentencing inquiry. And I just ask that the Court look at his proceeding, look at who he is as a person, and look at his sentencing for what it is or for what it was, and not take statements made in other, however the Court may want to interpret them, because I didn't get a chance to respond in that other proceeding, his attorney. Mr. Santibanez Cardona didn't get a chance to respond in that other proceeding. So I just would ask that the Court not overly look at this as sort of one thing here because it's not. Thank you. Just a couple of points. I would like to just quickly, again, respond to the idea that the statements twice, the Court doubling down on the Colombian statements that Mr. Montoya is sentencing, was somehow cured by her very brief statement at the end after the sentence had been fully imposed.  And they were talking about the right to appeal. That's when the government intervened again and said, I just want to make sure that you have no bearing. Her statement didn't – she did not retract her statements. She did not say, oh, no, I would never, as the government sort of suggests she said, I would never use nationality as a factor at sentencing. She said, the sentence would have been the same even if I hadn't. That's basically what she said. That does nothing to dispel the appearance that – that even if she wasn't biased, the appearance that the nationality may have played a role. And I want to repeat the standard from Leon. It's the risk that a reasonable observer, hearing or reading the quoted remarks, might infer, however incorrectly, that Montoya's nationality played a role in determining the sentencing. That is the standard. So the government makes a distinction between the individual defendant's nationality and the nation of origin of the drugs. And I guess I want to ask you the same question I asked your friend on the other side. Would it be permissible for the sentencing court to say, I don't care whether the individual I'm sentencing is Chinese origin or American origin or any other origin. I am very concerned about narco-trafficking coming out of Colombia and its impact on the world. And I'm going to take that into account with a higher sentence. Permissible, non-permissible under the case law? That's a closer case than this one, particularly with the remarks. And if it wasn't a Colombian national, it also would be a different case. But still the court would be imposing a higher sentence if it was a Colombian national because the drugs came from Colombia, so it might still be problematic. But it's a closer case than this one. This is not close at all. This case is just exactly right in line with all of the other cases. And they all talk about deterrent criminals. And just to respond to Judge Merriam's question about could you remand one case and not the other, that would be really unfair because one of the things that the sentencing judge considers is the disparity or not between defendants. And so if you're remanding one case to a different judge because nationality might have been considered, there's the likelihood that a different sentence would be imposed and then one defendant would be stuck with the same sentence despite the very same remarks actually made twice at that sentencing. Thank you. Thank you. Appreciate your arguments, everybody. We'll take it under advisement.